# Richmond

VIRGINIA TRANSIT COMPANY, A VIRGINIA CORPORATION V.
JOSEPH B. OWENS, ADMINISTRATOR OF THE ESTATE
OF RUTH H. OWENS, DECEASED.

October 10, 1949.

Record No. 3504.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples
and Miller, JJ.

The opinion states the case.

*T. Justin Moore* and *Archibald G. Robertson,* for the plaintiff in error.

*Leith S. Bremner, Thomas A. Williams, L. C. O'Connor, Thomas A. Williams, Jr.,* and *Ernest W. Williams,* for the defendant in error.

STAPLES, J., delivered the opinion of the court.

Mrs. Ruth H. Owens was struck by a streetcar of the Virginia Transit Company on July 19, 1946, and died almost immediately afterwards. Joseph B. Owens qualified as her administrator, and, in an action for the alleged wrongful death of his intestate, secured a judgment in the Circuit Court of the city of Richmond for $15,000 against the defendant Transit Company.

Just prior to the accident Mrs. Owens was walking along a walkway leading from the Broad Street Station to the sidewalk on the north side of Broad Street at a point in the

middle of the block, halfway between the intersection of Broad Street and Davis Avenue on the east and Robinson Street on the west. It was her intention to board an eastbound streetcar to the business section of the city. As was customary for pedestrians at this place, she proceeded directly across Broad Street in the center of the block in a direction which led to two streetcar safety zones. The situation is thus described in the plaintiff's brief:

"There are two sets of streetcar tracks on Broad Street, which are in the middle of Broad Street, the track on the north is for westbound streetcars and that on the south for eastbound streetcars, and as she walked southwardly she would enter the safety zones for pedestrians first for westbound and then for eastbound."

It was after she had crossed the westbound safety zone and while she was crossing the westbound track that she was struck by the westbound streetcar.

The defendant apparently does not deny that the evidence supports a jury finding that the operator of the streetcar was negligent, but it challenges the sufficiency of the evidence to support the jury's verdict, on the ground that Mrs. Owens was herself quilty of negligence which was an efficient and contributing proximate cause of her death.

The plaintiff does not seriously contend that Mrs. Owens was not guilty of negligence in failing to keep a proper lookout for the streetcar, but he insists that the evidence is sufficient to support the verdict of the jury under the last clear chance doctrine.

The plaintiff relies chiefly upon the testimony of Coly Henley, a colored porter, who was a passenger on the car. He testified that the car stopped at the eastern side of the intersection of Broad Street and Davis Avenue to receive and discharge passengers, and that, at the time the car started in motion, he saw Mrs. Owens proceeding in the walkway and that she had then reached the center of Broad Street. Henley further testified that in the presence of the plaintiff and his counsel, he had measured with a tapeline the distance

from the point where the car was standing when he first observed Mrs. Owens to the point where the car struck her, and that it was 241 feet. He says that he continued to watch Mrs. Owens as she crossed the street; that she was not running or hurrying but was walking in a normal way; that she entered the westbound track when the streetcar was 65 feet away from her; that the operator was winding his change box all the way up the street, and that he did not believe the operator ever looked up, although he could not be positive as to this. His observations were made from his seat about the center of the car on the left side. Mrs. Owens was approaching the car from the opposite, or right, side. According to Henley, a little later two children on the streetcar started hollering and the motorman "stopped so suddenly that he shook the streetcar and practically everyone on the streetcar was shook up." He says, the car struck Mrs. Owens before the brakes were applied. She was struck by the left front end of the car and fell between the east and westbound tracks.

The plaintiff does not claim that the car was traveling faster than twelve miles per hour, which was the maximum speed estimated by any of the witnesses.

The defendant argues that the testimony of Coly Henley is incredible because he testified to an impossibility. It is said that, according to his testimony, the car started from a standstill and traveled 241 feet while Mrs. Owens walked 15 feet to the track, plus 4 feet across the rails, and perhaps an additional 2 feet to allow for the overhang of the car on the left side which struck her, and that in order to cover the distance, if it be assumed that Mrs. Owens was walking two miles per hour, it was necessary for the car to have maintained a uniform speed in excess of twenty miles per hour to have run her down, whereas the speed of the car admittedly was at no time in excess of twelve miles per hour.

The defendant, in support of its contention that Mrs. Owens was guilty of contributory negligence as a matter of law, introduced the operator of the car and a number of other eyewitnesses.

The operator, John Corr, testified that he first saw Mrs. Owens when she was about six or eight feet from the westbound track; that she was hurrying zigzag between a stream of automobiles; that the streetcar was from five to ten feet from her at the time; that he immediately sounded his gong and threw his car into emergency, stopping it within approximately 20 feet after he first saw Mrs. Owens and applied the brakes. He denied that he was grinding his change carrier, but insisted that he was looking ahead.

James P. Wilson testified that he was sitting in the third seat from the front on the right-hand side of the car, which was traveling not in excess of ten miles per hour. He said he first saw Mrs. Owens go right in front of the car when he "imagined" it was about 4 feet from her. His attention, he says, was attracted by the gong, and, after Mrs. Owens started to walk across the track, he felt the thud of the brakes, and thereafter heard the noise of the car's impact with her. According to this witness, the operator was looking ahead.

Douglas C. Johnson testified that he was in the fourth or fifth seat from the front on the left side of the car, and that it was not running faster than ten miles per hour when the accident occurred. He did not see Mrs. Owens until after she was struck, but he heard the sounding of the gong and simultaneously felt the application of the brakes, followed by the thud of the impact. He then saw Mrs. Owens as she was falling to the ground. He said the operator was sounding the gong and doing all he could to stop the car.

Another witness, Clarence Harris, was seated about midway of the car on the right side. He says he saw Mrs. Owens when she was about 4 feet from the streetcar, having reached the track but not having started across. This witness stated that just as he was getting ready to yell it looked like the operator saw her at the same time and rang the bell, and tried to stop but could not. This witness later testified that, when he first saw Mrs. Owens, the streetcar was about the same distance from her as an indicated object

in the courtroom was from the witness. It was agreed that this was 10 feet. He testified further that "she was trying to run across—just looked like she was trying to run to get across the track."

W. K. Carper, another witness for defendant, testified that he was driving his automobile along Broad Street and had just come up with the rear of the streetcar when, ahead of him, he saw Mrs. Owens who was looking down and walking rapidly across the street. He stated that she never slackened up in her walk but entered the track when the streetcar, according to his best estimate, was only about 5 feet away from her. He was running his automobile alongside the streetcar at the time, which he estimated was making ten miles per hour. He said he knew the streetcar was bound to hit Mrs. Owens.

It is not denied that the burden is upon the plaintiff to introduce evidence from which the jury could properly find that, after the operator of the car discovered, or by the exercise of ordinary care could have discovered, *that Mrs. Owens was in a position of peril*, he could, by the exercise of reasonable care, have prevented the car from striking her.

The plaintiff's witness, Coly Henley, testified that Mrs. Owens entered the car track at a point which was 65 feet ahead of the car, and the plaintiff insists that at the instant she walked upon the track she was in a position of peril. We cannot agree that this is true. If the car was traveling at the maximum speed estimated by any of the witnesses, this was at the rate of 17.6 feet per second and it would have taken 3.7 seconds for the car to reach the point of the accident. During that time it would have been necessary for Mrs. Owens to walk 4 feet across the track plus two additional feet, allowing for the overhang, plus one foot for clearance, or only 7 feet in all, to avoid the approaching car. Obviously, she had every opportunity, if the accident happened under these conditions, to avoid injury to herself.

There is no testimony whatever as to what Mrs. Owens did or did not do after she got upon the track, and there-

fore no evidence from which it could be inferred that the motorman of the car should have concluded that she was in a position of peril. The plaintiff testified that she was 48 years of age, in perfect health, in possession of all of her faculties, and an active normal woman for her age. So far as the record shows, the motorman would have been justified in concluding that she would remove herself from danger. Even if she had been walking at the very slow rate of one and one-half miles per hour, she would have covered a distance of 2½ feet per second, or 8.14 feet in the 3.7 seconds which would have elapsed before the car could reach her. She could easily have cleared the tracks and avoided injury. She had equally as good an opportunity to save herself as the motorman had to save her, and, if the jury found that the accident happened under the state of facts testified to by Coly Henley, it must be held that negligence in not removing herself from the path of danger continued up to the moment of the impact, and concurred with any negligence which might be attributed to the operator of the car. The evidence does not justify the application of the doctrine of the last clear chance under such circumstances.

Coly Henley was the only eyewitness to the accident introduced by the plaintiff. Since his testimony does not sustain the plaintiff's right to recover, we must consider whether any evidence sufficient to support it appears from the testimony of the witnesses called by the defendant.

The testimony of the defendant's four eyewitnesses to the accident, which has been summarized above, if accepted by the jury, clearly establishes the fact that Mrs. Owens crossed in front of the streetcar at such close proximity to it that it was impossible for the motorman to stop it in time to avoid striking her.

The plaintiff insists, however, that even though this be true, the operator of the car should have seen Mrs. Owens while she was crossing Broad Street, and should have concluded that she was then in a position of peril. The plaintiff's brief thus states his argument:

"In the instant case, it was, or should have been, in the exercise of ordinary care, perfectly apparent to the motorman that the deceased intended continuing across the street and across his tracks, and this should have been apparent to him in plenty of time to slow down and permit her to cross in safety; * * * ."

In order to sustain a recovery on this theory the evidence must support a finding that, if the motorman had seen Mrs. Owens while she was approaching the tracks, he would or ought to have realized, in time to stop the streetcar, that she was going to continue across the tracks; in other words that she was oblivious, and would remain oblivious, of the danger of the approaching car and would walk in front of it. Under such circumstances, the failure of the motorman to exercise ordinary care to keep a proper lookout would be considered the sole proximate cause of the accident.

In support of his contention on this phase of the case, the plaintiff relies principally upon the testimony of defendant's witness, Carper. He testified that while he was driving his automobile westwardly on Broad Street he first saw Mrs. Owens in the vicinity of the center of the street as she was walking across; that he saw that she was not going to stop to let him pass in front of her so he pulled over towards the curb and passed behind her; that she was looking down and walking at a rather rapid pace. The only effect of this testimony is that she was looking where she was walking and not at the approaching automobile.

There was also other testimony bearing upon the question. H. J. Winston, defendant's witness, says he saw Mrs. Owens as she stepped from the sidewalk into Broad Street and "I would say she was glancing westward." He did not see her again after she started walking across.

Another witness for defendant, M. C. Lewis, says he saw her as she was approaching close to the streetcar and that she was walking "catabias", "looking east and going west to my idea, the way she was walking." In other words, she was looking towards the approaching streetcar.

The motorman, Corr, testified that when he first saw her, six or eight feet from the tracks, she was looking west; that he immediately rang his gong and slapped on the emergency brakes, but she did not stop; either ran, or walked very rapidly, right in front of the approaching car.

None of the other witnesses who saw Mrs. Owens before she went upon the track stated that they noticed anything unusual about her behavior or the manner in which she was walking, or noticed that she was looking in any particular direction at the time they saw her. Plaintiff's witness, Henley, said she was walking "in a normal manner." There is no testimony whatever that she was looking west between the time she stepped from the sidewalk into Broad Street and the time the motorman saw her when she was six or eight feet from the track. Nor does the defendant contend that there is any such evidence.

We do not think the testimony of the witnesses, or any of them, as to the manner in which Mrs. Owens was walking or the direction in which she was looking prior to the time the motorman saw her would sustain a finding that, if he had seen her sooner, he would or ought to have realized that she would walk onto the track without looking to ascertain if a streetcar was approaching.

Furthermore, consideration must be given to the fact that while Mrs. Owens was crossing Broad Street *she was approaching a safety zone* which was between her and the car track. It cannot be said that, under the circumstances shown by the evidence, it was the duty of the motorman to anticipate that, after reaching the zone, she would proceed from this position of safety, which protected her both from passing automobiles and passing streetcars, without ascertaing that she could safely do so.[1]

It was the duty of Mrs. Owens before going upon the track to keep a lookout for an approaching streetcar. If she had looked, she undoubtedly would have seen it. If she

---

[1] Westbound streetcars did not stop at this safety zone under the regulations in force at the time of the accident.

did not look, and proceeded to walk upon the track in such close proximity to it that it was impossible for the motorman to stop it in time to prevent striking her, she was clearly guilty of negligence which was an efficient proximate cause of her death. If she did look and saw the car, she was guilty of negligence in undertaking to cross the track under such circumstances, and this negligence was, to say the least, a proximate cause of the accident.

There is no evidence in the record which would justify the jury in finding that the motorman either discovered her in a condition of peril, or by the exercise of reasonable care could have discovered it, in time to have avoided the accident. This is equally true whether she entered upon the track 65 feet in front of the streetcar, as testified to by Coly Henley, or whether she entered upon the track at a distance of 4 to 10 feet in front of the car, as testified to by the defendant's four eyewitnesses. A verdict founded on any such hypothesis, would, under the evidence in this case, necessarily be based on pure speculation.

The rule applicable to this class of cases is well-settled by our previous decisions. They are reviewed at length in the opinion of Prentis, P., in *Gordon* v. *Virginia Elec., etc., Co.,* 150 Va. 442, 143 S. E. 681. It would serve no good purpose to add anything to what was said on the subject in that opinion, as our subsequent decisions have not departed from the principles there enunciated.

The judgment of the circuit court must be reversed and final judgment entered here for the defendant.

*Reversed and final judgment.*

HUDGINS, C. J., and MILLER, J., concur in result.